## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **JEFFREY T. CRUMLEY**<br>    **Plaintiff**<br><br>**v.**<br><br><br><br>**ASCENSION SERVICES, L.P., &**<br>**JANE DOE a/k/a Ashley Hoover**<br>    **Defendants** | **CIVIL ACTION**<br><br>**COMPLAINT**<br><br>**JURY TRIAL**<br>**CLAIMED**<br><br><br><br><br><br>**AUGUST 17, 2009** |

### COMPLAINT

### I. INTRODUCTION

1.  This is a suit brought by a consumer who has been harassed and abused by the Defendant collection agency. This action is for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Creditor Collection Practices Act ("CCPA"), Conn. Gen. Stat. § 36a-645 *et seq.*, the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.,* and for intentional infliction of emotional distress.

### II. PARTIES

2.  The plaintiff, Jeffrey T. Crumley ("Plaintiff"), is a natural person residing in Groton, Connecticut and is enlisted as a chief in the United States Navy.

3.  The defendant, Ascension Services, L.P. ("Ascension"), is a Nevada limited partnership and is engaged in the business of purchasing and collecting consumer debts.

4.  Jane Doe a/k/a Ashley Hoover ("Hoover") is an employee of Ascension who works as a debt collector. Hoover's identity and state of residence are not known to Plaintiff but is ascertainable in discovery.

### III.  JURISDICTION

5.  Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331 and 1337, and Fed. R. Civ. P. 18(a).

6.  This Court has jurisdiction over Ascension because it engages in debt collection activities within Connecticut.

7.  Venue in this Court is proper, as the Plaintiff is a resident of Connecticut and the acts complained of occurred in this state.

### IV.  FACTUAL ALLEGATIONS

8.  Prior to February 2009, Plaintiff was making payments through a debt management program on a debt he owed to Town North Bank-North Alabama Educators Credit Union ("NAECU").

9.  Ascension purchased the NAECU account associated with that debt at some point while Plaintiff was making payments on said account.

10. Sometime on or around February 16, 2009 – after Ascension had purchased the aforementioned account - Ascension representative Hoover called Plaintiff's mother's residence in Alabama in an attempt to collect that debt, and she spoke with Plaintiff's sister.

11. During that conversation, Hoover told Plaintiff's sister that she needed to get in contact with Plaintiff and have him call Ascension, or else Ascension was going to

2

sue Plaintiff and contact Plaintiff's superior officer and have Plaintiff's security clearance taken away.

12. Plaintiff's sister told Plaintiff's mother about what Ascension had said, and this distressed Plaintiff's mother, especially since Plaintiff was a chief in the United States Navy and was revered by his family as a leader, and she worried that his reputation and career were about to be severely tarnished; furthermore, Plaintiff's mother also knew that Plaintiff had just been assigned orders to another submarine mission, and she worried that Ascension would cause serious problems in that regard.

13. Plaintiff's mother called Plaintiff soon thereafter and told him about what Hoover had told his sister.

14. Upon receiving this information from his mother, Plaintiff became very upset and angry, and he called Ascension back that same day and spoke with Hoover.

15. During that conversation, Hoover informed Plaintiff that Ascension had purchased the account from NAECU, and she told Plaintiff that if he did not pay Ascension $4,000 on the account that day, then she was going to serve him paperwork, contact his captain, and have his security clearance taken away.

16. Hoover's threats made Plaintiff very worried, and he took Hoover's threats very seriously and became gravely concerned that his career could be placed in jeopardy if he was not able to pay Ascension the demanded amount, but he did not have the money to make a $4,000 lump sum payment.

17. Plaintiff told Hoover that he did not have enough money to pay Ascension $4,000 at once, and he asked whether Ascension would be willing to accept installment payments instead, but Hoover replied that Ascension would not accept installment

payments, and that he better find a family member or friend who could loan him the money.

18. As soon as Plaintiff hung up with Hoover, Plaintiff started making calls to his family members in an attempt to determine whether any of them could loan him the money necessary to pay the $4,000 demanded by Ascension.

19. Plaintiff was deeply embarrassed by having to make calls to his family members to ask for money; Plaintiff was considered the leader in his family, and it went against his reputation to call his family and beg for money.

20. Plaintiff determined that none of his family members were capable of lending him money, and Plaintiff placed another call to Hoover, and they spoke.

21. During that conversation, Plaintiff told Hoover that he intended to meet with Navy Legal to discuss this matter, and upon hearing his, Hoover replied that it might be possible for Plaintiff to make installment payments after all, and Plaintiff paid Ascension $1,000 over the phone and agreed to make subsequent monthly payments of $250 by automatic withdrawal from his checking account, however Plaintiff only agreed to do this in the interest of buying him some time so that he could consult with an attorney regarding his rights.

22. Plaintiff made an appointment with Navy Legal on or around February 17th, and later on that evening of that same day, Plaintiff received a call from his ex-wife, and in that call, she told him that Ascension had contacted her and her mother and said that if he did not pay off the debt, then Ascension would come after her for the balance.

23. In the meantime, on or around March 25, 2009, Plaintiff closed his checking account so that Ascension could not withdraw the $250.

4

24. On or around April 7, 2009, Plaintiff received a letter notifying him that Ascension had attempted to withdraw $250 from his account but that said transaction failed, and Ascension called him soon thereafter and asked him why he closed his account, and Plaintiff told the representative that he was not going to pay because Hoover had deceived him and lied to him about his rights and about what she was going to do if he did not pay.

## V. COUNT ONE
### Fair Debt Collection Practices Act - Ascension

25. Plaintiff incorporates Paragraphs 1-24.

26. Ascension violated the FDCPA in one or more of the following respects:

a.      Ascension violated 15 U.S.C. § 1692e(5) and §1692e(10) by telling Plaintiff's sister that if Plaintiff did not get in contact with Ascension, then it would sue Plaintiff and contact his superior officer and have Plaintiff's security clearance taken away;

b.      Ascension violated 15 U.S.C. § 1692e(5) and §1692e(10) when it told Plaintiff that if he did not pay Ascension $4,000 on the account that day, then Ascension was going to serve him paperwork and contact his captain and have his security clearance taken away;

c.      Ascension violated 15 U.S.C. § 1692e(5) and §1692e(10) when it called Plaintiff's ex-wife and told her that it would come after her to collect the debt if Plaintiff did not pay said debt;

d.      Ascension violated 15 U.S.C. § 1692e(7) when, in order to disgrace Plaintiff, Ascension falsely represented that failure to pay the amount demanded

amounted to conduct that would allow Ascension to have Plaintiff's security clearance taken away;

      e.     Ascension violated 15 U.S.C. § 1692c(b) when it called and spoke with Plaintiff's sister and Plaintiff's ex-wife in an impermissible manner with respect to the underlying debt.

      f.     Ascension violated 15 U.S.C. § 1692d by engaging in conduct as described above, the natural consequence of which was to harass, oppress, or abuse Plaintiff.

      g.     Ascension violated 15 U.S.C. § 1692f by using unfair or unconscionable means to attempt to collect the debt as described above.

27. For Ascension's violations of the Fair Debt Collection Practices Act as described above, the Plaintiff is entitled to recover his actual damages (including emotional distress), statutory damages of $1,000, and reasonable attorney's fees pursuant to 15 U.S.C. § 1692K.

## VI.  COUNT TWO
### Fair Debt Collection Practices Act - Hoover

28. Plaintiff incorporates Paragraphs 1-26.

29. Hoover violated the FDCPA for the reasons enumerated in Paragraph 26a-g, described above.

## VII.  COUNT THREE
### Creditor Collection Practices Act - Ascension

30. Plaintiff incorporates Paragraphs 1-24.

31. Ascension violated the CCPA and regulations promulgated thereunder by the Connecticut Department of Banking, as follows:

a. Ascension violated Conn. Agencies Reg. § 36a-647-6(6) and § 36a-647-6(11) when it told Plaintiff that if he did not pay Ascension $4,000 on the account that day, then Ascension would serve him paperwork, contact his captain, and have his security clearance taken away;

b. Ascension violated Conn. Agencies Reg. § 36a-647-4(b) by contacting and Plaintiff's sister and Plaintiff's ex-wife and speaking with them in an impermissible manner;

c. Ascension violated Conn. Agencies Reg. § 36a-647-5 by engaging in conduct, the natural consequence of which to a reasonable person would be to harass or abuse such person in connection with the collection of a debt.

d. Ascension violated Conn. Agencies Reg. § 36a-647-6(6) and § 36a-647-6(11) when it told Plaintiff's sister that it would sue Plaintiff and contact his superior officer and have Plaintiff's security clearance taken away if Plaintiff failed to pay, and when it told Plaintiff's ex-wife that Ascension would come after her to collect the debt if Plaintiff failed to pay; and

e. Ascension violated § 36a-647-6 by using deceptive practices as described above.

37. For Ascension's violations of the Creditor Collection Practices Act as described above, the Plaintiff is entitled to recover his actual damages (including emotional distress), statutory damages of $1,000, and reasonable attorney's fees, pursuant to Public Act No. 07-176.

7

## VIII.  COUNT FOUR
### Creditor Collection Practices Act - Hoover

38. Plaintiff incorporates Paragraphs 1-24 and Paragraph 31.

32. Hoover violated the CCPA for the reasons enumerated in Paragraph 31a-e,

described above.

## IX.  COUNT FIVE
### Connecticut Unfair Trade Practices Act – Ascension

33. Plaintiff incorporates Paragraphs 1-24.

34. Ascension violated CUTPA by its debt collection activities described above.

35. Ascension's acts as described above were unfair, immoral, unethical,

oppressive and unscrupulous and such as such to cause substantial injury to

consumers.

## X.  COUNT SIX
### Intentional Infliction of Emotional Distress – Ascension & Hoover

36. Plaintiff incorporates Paragraphs 1-24.

37. Ascension and Hoover knew, or reasonably should have known, that their

conduct would likely cause emotional distress to Plaintiff.

38. Ascensions's and Hoover's conduct did cause Plaintiff to suffer emotional

distress, embarrassment, shame, stress and anxiety.

39. Ascension's and Hoover's actions were willful, wanton and malicious, in that

they intended to cause Plaintiff distress to induce Plaintiff to pay the debt, in hopes that

Plaintiff would pay in order to relieve the stress.

8

WHEREFORE, the Plaintiff prays for the following relief:

Monetary damages related to Plaintiff's emotional distress; actual damages, statutory damages, and attorney's fees and costs pursuant to 15 U.S.C. § 1692k and Public Act No. 07-176; monetary damages pursuant to Conn. Gen. Stat. §42-110g; punitive damages pursuant to Conn. Gen. Stat. § 42-110g; attorney's fees and costs pursuant to Conn. Gen. Stat. § 42-110g, and such other relief as this Court deems appropriate.

**PLAINTIFF, JEFFREY T. CRUMLEY**

By:

Daniel S. Blinn, ct02188
Matthew W. Graeber, ct27545
dblinn@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408; Fax. (860) 571-7457